Rafael Icaza (Idaho Bar No. 10912)
Rebecca Evans (PHV, UT #16846)
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Phone: (385) 233-6612 ext. 3152
rafaelicaza@lawhq.com
rebecca@lawhq.com

*Attorneys for Plaintiffs, listed below*

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Nathan Chennette**, et al, | |
| Plaintiffs, | Civil Case No.: 1:20-cv-00201-DCN |
| v. | |
| **Porch.com Inc.,** a Delaware corporation; **GoSmith Inc.** a Delaware corporation; **Matthew Ehrlichman**, CEO and co-founder of Porch.com Inc. and CEO of GoSmith, Inc., in his individual capacity; **Brenton Marrelli**, CEO and co-founder of GoSmith Inc., in his individual capacity; and **Darwin Widjaja,** CTO and co-founder of GoSmith Inc. and VP of Porch.com Inc., in his individual capacity, | **MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS [DKT. 18]** **Judge David C. Nye** |
| Defendants | |

Plaintiffs' Response [Dkt #20] opposes Defendants' Motion to Dismiss Plaintiffs' Complaint. Plaintiffs respectfully request that the Court deny the motion, and support this request with the following memorandum.

MEMO. IN OPP. TO MOT. TO DISMISS

## TABLE OF CONTENTS

**MEMORANDUM** .................................................................................................1

**I.** **INTRODUCTION** ....................................................................................1

**II.** **FACTS** .................................................................................................3

**III.** **LEGAL STANDARDS** .........................................................................4

    **A.** Fed. R. Civ. P. 12(b)(1) - Subject Matter Jurisdiction & Standing.........................4

    **B.** Fed. R. Civ. P. 12(b)(2) - Personal Jurisdiction......................................4

    **C.** Fed. R. Civ. P. 12(b)(6) - Stating a Claim for Relief ...............................5

    **D.** 47 C.F.R. § 64.1200(f)(1) & (f)(12) - Telemarketing Under the TCPA..................6

    **E.** 27 FCC Rcd. 1830 - Consent Under the TCPA.........................................7

    **F.** 47 U.S.C. §§ 227(b)(3); 227(c)(5) - National Do Not Call Registry.....................8

    **G.** 47 U.S.C. § 217 - Individual Corporate Officer Liability Under the TCPA...........8

**IV.** **ARGUMENT** ........................................................................................9

    **A.** Plaintiffs Have Article III Standing Under FRCP 12(b)(1) ....................................9

    **B.** Plaintiffs Sufficiently Alleged Personal Jurisdiction Under FRCP 12(b)(2).........10

    **C.** Plaintiffs Sufficiently Alleged TCPA Claims Under FRCP 12(b)(6)....................11

        **1.** Plaintiffs have prudential standing................................................12

        **2.** Plaintiffs sufficiently alleged all factual elements of an ATDS claim...........12

        **3.** Plaintiffs sufficiently alleged that the texts were telemarketing..................14

            **a.** Defendants' telemarketing arguments are not applicable....................15

        **4.** Plaintiffs sufficiently alleged that Defendants lacked consent.....................16

        **5.** Plaintiffs sufficiently alleged Do-Not-Call violations................................18

        **6.** Plaintiffs sufficiently alleged corporate officer liability.............................19

**V.** **CONCLUSION**....................................................................................20

# TABLE OF AUTHORITIES

Page

## Cases

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...................................................................................5, 12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...................................................................................5, 12

*Bell v. Hood*,
 327 U.S. 678 (1946)........................................................................................4

*Bush v. GoSmith, Inc. et al*,
 No. 1:2017-cv-02962 (N.D. Ga. 2017)............................................................2

*Cain et al v. Porch.com Inc. et al*,
 5:20-cv-00697-BLF (N.D Cal. 2020)...............................................................15

*Carey v. Brown*,
 447 U.S. 455 (1980)........................................................................................1

*Chesbro v. Best Buy Stores, L.P.*,
 705 F.3d 913 (9th Cir. 2012)..........................................................................15

*Clements v. GoSmith, Inc., et al*,
 No. 2:2017-cv-04224 (W.D. Mo. 2017)............................................................2

*Concha v. London*,
 62 F.3d 1493 (9th Cir. 1995).......................................................................9, 13

*Cooper v. Bell*,
 628 F.2d 1208 (9th Cir. 1980)..........................................................................5

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014)........................................................................................4

*Dolemba v. Illinois Farmers Ins. Co.*,
 2015 U.S. Dist. LEXIS 104314 (N.D. Ill. Aug. 10, 2015)................................15

*Dole Food Co. v. Watts*,
 303 F.3d 1104 (9th Cir. 2002)..........................................................................5

*Edelsberg v. Vroom, Inc.*,
 2018 U.S. Dist. LEXIS 50420 (S.D. Fla. Mar. 27, 2018)................................18

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996)......................................................................................10, 11

*Everest Jennings, Inc. v. American Motorists Ins. Co.*,
    23 F.3d 226 (9th Cir. 1994)............................................................................................6, 14

*Friedman v. Torchmark Corp.*,
    2013 U.S. Dist. LEXIS 54020 (S.D. Cal. Apr. 16, 2013)................................................16

*Golan v. Veritas Entm't, LLC*,
    788 F.3d 814 (8th Cir. 2015)........................................................................................15, 16

*Grafton v. EMI Prods., LLC*,
    2011 U.S. Dist. LEXIS 144132 (D. Idaho November 22, 2011).......................................4

*Grant v. Capital Mgmt. Servs., L.P.*,
    449 F. App'x 498 (9th Cir. 2011)....................................................................................18

*Grossberg v. GoSmith, Inc. et al*,
    No. 1:18-cv-24811 (S.D. Fla. 2017)..................................................................................2

*Hobbs v. GoSmith, Inc.*,
    No. 5:2017-cv-06776 (N.D. Cal. 2017).............................................................................2

*Holden v. Hagopian*,
    978 F.2d 1115 (9th Cir. 1992).........................................................................................14

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)...........................................................................................5

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010)......................................................................................4, 9

*La Force v. GoSmith, Inc.*,
    No. 17-cv-05101-YGR (N.D. Cal. 2017)..........................................................................2

*Lynch v. Rawls*,
    429 F. App'x 641 (9th Cir. 2011)......................................................................................4

*Marvix Photo, Inc. v. Brand Technologies, Inc.*,
    647 F.3d 1218 (9th Cir. 2011).........................................................................................10

*Mattson v. New Penn Financial, LLC*,
    2019 U.S. Dist. LEXIS 225821 (D. Or. Nov. 7, 2019)....................................................19

*Mattson v. Quicken Loans Inc.*,
    2019 U.S. Dist. LEXIS 225872 (D. Or. 2019)................................................................19

*McNatt v. Apfel*,
　201 F.3d 1084 (9th Cir.2000).............................................................................4

*Meyer v. Portfolio Recovery Assocs., LLC*,
　707 F.3d 1036 (9th Cir. 2012)...................................................................2, 6, 11

*Monsanto Co. v. Geertson Seed Farms*,
　561 U.S. 139 (2010)......................................................................................4, 9

*Moser v. Health Ins. Innovations, Inc.*,
　2018 WL 325112 (S.D. Ca. Jan. 5, 2018)..............................................10, 11

*Nat'l Org. for Women v. Scheidler*,
　510 U.S. 249 (1994).........................................................................................5

*Navex Global, Inc. v. Stockwell*,
　2019 U.S. Dist. LEXIS 206814 (D. Idaho Nov. 25, 2019).............................3

*Parks Sch. of Bus., Inc. v. Symington*,
　51 F.3d 1480 (9th Cir. 1995)....................................................................5, 6, 14

*Petrie v. Gosmith, Inc.*,
　No. 1:2018-cv-01528 (D. Colo. 2018)...........................................................2

*Petrovskiy v. Gosmith, Inc.*,
　No. 1:2018-cv-06929 (E.D.N.Y. 2018)..........................................................2

*Picot v. Weston*,
　780 F.3d 1206 (9th Cir. 2015)........................................................................5

*Pinkard v. Wal-Mart Stores, Inc.*,
　2012 U.S. Dist. LEXIS 160938 (N.D. Ala. Nov. 9, 2012)...............................18

*Reardon v. Uber Technologies, Inc.*,
　2015 WL 4451209 (N.D. Cal. July 19, 2015)..................................................16

*Rojas v. GoSmith, Inc.*,
　No. 2:17-cv-00281 (N.D. Ind. 2017)..............................................................2

*Roylance v. ALG Real Estate Servs.*,
　2015 U.S. Dist. LEXIS 44930 (N.D. Cal. Mar. 16, 2015)................8, 9, 19, 20

*Schloss v. GoSmith, Inc.*,
　No. 5:2020-cv-00126 (N.D. Cal. 2020)..........................................................2

*Schloss v. GoSmith, Inc. et al*,
　No. 2:2017-cv-04224 (E.D. Mich. 2017).......................................................2

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)..................................................................................5, 10

*Seale et al v. GoSmith, Inc.*,
    5:19-cv-08389-BLF (N.D. Cal. 2019)...........................................................................15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..................................................................................6, 9, 12

*Star Dialysis, LLC v. WinCo Foods Emp. Ben. Plan*,
    401 F.Supp.3d 1113 (D. Idaho 2019)...............................................................................5

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998)...............................................................................................5

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017)...........................................................1, 6, 9, 12, 13

*Vignolo v. Miller,*
    120 F.3d 1075 (9th Cir. 1997)....................................................................................14

*Winner v. Kohl's Dep't Stores Inc.*,
    2017 U.S. Dist. LEXIS 131225 (E.D. Pa. August 17, 2017)............................................18

*Wyler Summit Pshp. v. Turner Broad. Sys.*,
    135 F.3d 658 (9th Cir. 1998)..................................................................................5, 15

## Statutes

47 U.S.C. §217.....................................................................................................8, 19

47 U.S.C. §227.....................................................................................................passim

47 U.S.C. §227(a)(1)...............................................................................................passim

47 U.S.C. §227(b)..................................................................................................passim

47 U.S.C. §227(b)(1).......................................................................................2, 6, 11, 13

47 U.S.C.  §227(b)(1)(A).........................................................................................6, 13

47 U.S.C.  §227(b)(1)(A)(iii)..........................................................................................13

47 U.S.C. § 227(b)(2)(B)(ii)(I).....................................................................................6, 12

47 U.S.C. § 227(b)(3)..................................................................................6, 8, 9, 12, 18

47 U.S.C. § 227(c)(5)..................................................................................6, 8, 9, 12, 19

Idaho Code § 5-514......................................................................................................4

**Other**

U.S. Const. art. III.................................................................................................4, 9, 20

47 C.F.R. § 64.1200........................................................................................2, 6, 7, 11, 14

47 C.F.R. § 64.1200(a)........................................................................................2, 6, 7, 11

47 C.F.R. § 64.1200(f)............................................................................................6, 7, 14

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    7 FCC Rcd 8752 (26) (FCC October 16, 1992)....................................................7, 18

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    18 FCC Rcd 14014 (20) (FCC July 3, 2003)........................................................8, 12

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    20 FCC Rcd 3788 (5) (FCC February 18, 2005)............................................6, 8, 12, 19

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    21 FCC Rcd 3787 (4) (FCC April 6, 2006).............................................................16

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    23 FCC Rcd 9779 (11) (FCC June 17, 2008)..........................................................19

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    27 FCC Rcd 1830 (2) (FCC February 15, 2012)................................................1, 7, 9, 18

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,*
    30 FCC Rcd 7961 (10) (FCC July 10, 2015).........................................................7, 8, 18

**Rules**

Fed. R. Civ. P. 8(a)...................................................................................................3

Fed. R. Civ. P. 12(b)...........................................................................................passim

Fed. R. Civ. P. 12(b)(1).......................................................................................1, 3, 9

Fed. R. Civ. P. 12(b)(2).........................................................................................4, 10

Fed. R. Civ. P. 12(b)(6).......................................................................................passim

Fed. R. Civ. P. 12(f)..................................................................................................3

Fed. R. Evid. 401....................................................................................................17

Fed. R. Evid. 402....................................................................................................17

## MEMORANDUM

### I.   INTRODUCTION

Defendant companies Porch.com Inc. ("Porch") and GoSmith, Inc. ("GoSmith") connect homeowners with local contractors. GoSmith scraped third-party directory web pages to get contractor's personal phone numbers then sent these contractors thousands of unwanted text messages selling leads.

Plaintiffs Nathan Chenette and 50 other individuals ("Plaintiffs") brought an action in this court, seeking redress for Defendants' privacy violations under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Compl. at ¶ 10 [Dkt # 2]. Defendants used an autodialer ("ATDS") to send unwanted telemarketing messages to Plaintiffs' cell phones, ignoring Plaintiffs' enrollment on the Do Not Call Registry. Plaintiffs respectfully ask the Court to deny Defendants' motion, for the following reasons.

First, Plaintiffs must only show that the allegations would confer standing if proven. Plaintiffs alleged at least 7,527 concrete and particularized messages, which Defendants do not contest sending. Compl. at ¶ 10. Instead, Defendants argue that those texts did not injure Plaintiffs because Plaintiffs relinquished privacy interests by publishing their numbers on their websites. However, the Supreme Court has consistently recognized "the right of an individual to be let alone in the privacy of the home, sometimes the last citadel of the tired, the weary, and the sick." *Carey v. Brown*, 447 U.S. 455, 471 (1980). Privacy interests prevail absent unambiguous repeal. *See infra* § IV.C.4. In the Ninth Circuit, receiving a TCPA-violating text is an injury-in-fact. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017). A website which lists a phone number is not "consent." *See Rules & Reg.s Implem. the TCPA of 1991*, 27 FCC Rcd 1830 (2), ¶¶ 18, 20, 32-33 (FCC February 15, 2012) (hereinafter "2012 FCC TCPA Order"). Finally, "consent" is an affirmative defense, not grounds for 12(b) motion. *See* Fed. R. Civ. Proc. 12(b). Plaintiffs have 12(b)(1) standing.

Second, the Court has personal jurisdiction over Defendants.  Ehrlichman is CEO of Porch and GoSmith. GoSmith has ceased operations and is fully owned by Porch. Marrelli and Widjaja have sworn to personal involvement in GoSmith's operations. Defendants, individually

and collectively, knowingly authorized, directed, and permitted continuing TCPA violations directed at Idaho; even after being put on notice at least ten times[1] of alleged violations. Jurisdiction is appropriate.

Third, Plaintiffs are in Congress's protected class, thus their TCPA claims survive a 12(b)(6) challenge. Compl. at ¶¶ 56–57; *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.1200(a)(1) & (2). The texts attempted to initiate sales, and were not "an ongoing business transaction." Defendants' request for judicial notice, a red herring, presents the Court with websites and irrelevant geographical information, which can never support a proper consent showing. Defendants' Counsel searched for individual Plaintiffs' websites years after Defendants sent messages to those individuals. Defendants' argument is both impossible as to time and specious.

Fourth, Plaintiffs have sufficiently alleged 2,754 Do Not Call Registry violations from Defendants after Plaintiffs' registered their phone numbers on the National Do Not Call Registry ("Registry"). Compl. at ¶¶ 11–12; Exh. A to Compl. [Dkt. #2-2]. Plaintiffs gave the exact registration date and number of text messages received. *Id*. Registry protections apply to residential numbers used in home-based businesses.

Fifth, Plaintiffs sufficiently alleged valid claims against GoSmith's corporate officers. The TCPA imputes liability to corporate officers who direct, manage, authorize, oversee, or participate in TCPA violations. Defendants knew of and continued to authorize, manage, and direct the telemarketing campaigns, despite numerous TCPA suits. Liability is appropriate here.

Plaintiffs note that a footnote is not the appropriate procedural vehicle for asking the Court to strike an exhibit. *See* Defs.' Memo. in Support of Mot. to Dismiss Pls.' Compl. at 26

---

[1] *See Clements v. GoSmith, Inc., et al*, No. 2:2017-cv-04224 (W.D. Mo. 2017); *Schloss v. GoSmith, Inc. et al*, No. 2:2017-cv-04224 (E.D. Mich. 2017); *Rojas v. Gosmith Inc, et al*, No. 2:2017-cv-00281 (N.D. Ind. 2017); *Bush v. GoSmith, Inc. et al*, No. 1:2017-cv-02962 (N.D. Ga. 2017); *La Force v. GoSmith, Inc*., No. 17-cv-05101-YGR (N.D. Cal. 2017); *Hobbs v. Gosmith, Inc.*, No. 5:2017-cv-06776 (N.D. Cal. 2017); *Petrovskiy v. Gosmith, Inc.*, No. 1:2018-cv-06929 (E.D.N.Y. 2018); *Grossberg v. Gosmith, Inc.*, No. 1:18-cv-24811 (S.D. Fla. 2018); *Petrie v. Gosmith, Inc.*, No. 1:2018-cv-01528 (D. Colo. 2018); *Schloss v. GoSmith, Inc.*, No. 5:2020-cv-00126 (N.D. Cal. 2020).

MEMO. IN OPP. TO MOT. TO DISMISS - 2

n.13 [Dkt #18-1]. An exhibit may only be struck under Fed. R. Civ. P. 12(f) if it is "redundant, immaterial, impertinent, or scandalous." Exhibit A is incorporated into the Complaint and contains essential information detailing Plaintiffs' claims (verified through public website data accessible to any internet user with an ordinary browser). Exhibit A is extremely relevant and is not impertinent or scandalous in any way. *Id.* Further, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Navex Global, Inc. v. Stockwell*, 2019 U.S. Dist. LEXIS 206814, *4 (D. Idaho Nov. 25, 2019).

Additionally, the messages listed in Complaint paragraphs 24–25 were sent to plaintiffs in other cases disclosed to the Court in the Notice of Pendency [Dkt. #10], are substantially similar or identical to texts received by Plaintiffs, and demonstrate Defendants' automated system. Compl. at ¶¶ 19–26. Defendants do not dispute Plaintiffs' allegation that they used the same automated system to message each Plaintiff. *Id.*

Plaintiffs have exceeded their burden to provide a "short and plain statement" showing entitlement to relief. Fed. R. Civ. P. 8(a). Plaintiffs are not required to prove Defendants' culpability at the pleading stage and respectfully ask the Court to deny Defendants' motion.

## II.   FACTS

GoSmith sent at least 7,527 text messages to 51 Plaintiffs' personal cell phones using an ATDS. Compl. at  ¶¶ 1, 10, 11, 19; Ex. A to Compl.. At least 2,754 of those messages were sent to Plaintiffs who had registered for protection on the National Do Not Call Registry. *Id*.

GoSmith sells leads to contractors. In August 2012, GoSmith began taking contractors' contact information from unwitting listing-provider websites such as Yelp and the BBB, compiling and storing the information in its own database sequentially, identifying where and when it got the information. *Id.* at  ¶¶ 14–16. GoSmith sent many texts through online telephone services that are used mainly for automated messaging. *Id.* at  ¶¶ 18–19. The messages received by Plaintiffs typically said: "[Name] is wanting [service] in [city]. You have 1st priority. Reply 1 if interested, 3 if not." *Id.* at ¶ 20–25,. The texts directed to gosmith.com,

where contractors had to purchase credits to view the lead. *Id*. at ¶¶ 29, 33–35. Messages never offered employment. *Id*. at ¶ 36.

Defendants Marrelli, Widjaja, and Ehrlichman are GoSmith's corporate officers and have been personally involved in almost every aspect of its strategy, operations, and marketing. Compl. at ¶¶ 31, 37–47, 51(E);  Ex. C–D to Compl. [Dkt. ##2-4, 2-5].  These officers led and operated a national marketing campaign with effects felt in Idaho. *Id*. at ¶¶ 1, 10–57.

Defendants knew targeting individuals in Idaho could lead to liability.

## III.  LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(1) - Subject Matter Jurisdiction & Standing

A 12(b)(1) challenge fails when a plaintiff establishes Article III standing by alleging an"injury-in-fact that is (1) concrete and particularized, as well as actual and imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "[A] plaintiff need only show that the facts alleged, if proven, would confer standing." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) "The pleader need not plead evidence, but he must set forth "particularized factual statements that are essential to the claim." *Lynch v. Rawls*, 429 F. App'x 641, 644 (9th Cir. 2011). On review, courts"favorably" view "the facts alleged to support jurisdiction." *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000) Unless a claim "clearly appears to be immaterial . . . [or] is wholly insubstantial and frivolous," a claim may not be dismissed under 12(b)(1). *See Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

### B.  Fed. R. Civ. P. 12(b)(2) - Personal Jurisdiction

Since "the state and federal limits of the Idaho long arm statute are coextensive" (*Grafton v. EMI Prods., LLC*, 2011 U.S. Dist. LEXIS 144132, *5 (D. Idaho November 22, 2011); Idaho Code § 5-514)), specific personal jurisdiction is appropriate when a defendant has sufficient minimum contacts with Idaho to satisfy the Constitutional Due Process requirements. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

To establish minimum contacts, and justify specific personal jurisdiction, (1) the non-resident defendant must "purposefully direct" activity involving the forum; (2) the claim

must "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). That burden can be met simply with a prima facie showing. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)."On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Pshp. v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). Purposeful direction requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Any lack of personal jurisdiction dismissal is without prejudice. In essence, the court determines it is powerless to proceed to judgment and can not adjudicate the validity of the claim. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) (distinguished on other grounds).

### C.  Fed. R. Civ. P. 12(b)(6) - Stating a Claim for Relief

To survive a 12(b)(6) motion, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When analyzing a 12(b)(6) motion, "the [c]ourt must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Star Dialysis, LLC v. WinCo Foods Emp. Ben. Plan,* 401 F.Supp.3d 1113, 1124 (D. Idaho 2019) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). "We presume that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994).  Exhibits attached to a complaint "may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). "A complaint should not be dismissed

unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *Parks*, 51 F.3d at 1484 (citing *Everest Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994)).

A prudential standing challenge is a "zone of interest" argument, challenging the plaintiff's right to protection under the relevant law. The TCPA is intended to protect "privacy rights" (47 U.S.C. § 227(b)(2)(B)(ii)(I)) and provides a private right of action for persons who receive automated, artificial, or prerecorded calls in violation of 47 U.S.C. §§ 227(b)(1)(A), 227(b)(3). It provides a second right of action for any residential telephone subscriber on the Do Not Call Registry who has received more than one telephone solicitation "within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). The TCPA was meant to protect both consumers and businesses. *See* Congressional Statement of Findings, § 2, Pub.L. 102-243. This protection covers residential home based-businesses subscribers. "We also decline to exempt from the do-not-call rules those calls made to 'home-based businesses.'" *Rules & Reg.s Implem. the TCPA of 1991*, 20 FCC Rcd. 3788 (5), ¶ 14 (FCC February 18, 2005) (hereinafter "2005 FCC TCPA Order").

A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten*, 847 F.3d at 1042 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). "The Ninth Circuit has established three elements for a TCPA violation: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer*, 707 F.3d at 1042. This is all that Plaintiffs are required to plausibly allege. *See id.* at 1043; 47 C.F.R. § 64.1200(a)(1) & (2).

### D.  47 C.F.R. § 64.1200(f)(1) & (f)(12) - Telemarketing Under the TCPA

The TCPA applies to text messages that contain advertisements and telemarketing. An "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "[T]elemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* at § 64.1200(f)(12).

### E.  27 FCC Rcd. 1830 - Consent Under the TCPA

Since 2013, the TCPA has required "prior express *written* consent" for any message "that includes or introduces an advertisement or constitutes telemarketing." 47 C.F.R. §64.1200(a)(2); 2012 FCC TCPA Order at ¶¶ 18, 20, 32-33 (effective October 16, 2013) (emphasis added). "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages." 47 C.F.R. § 64.1200(f)(8). Implied or generalized consent is insufficient. Callers must provide a "clear and conspicuous disclosure" that (1) the telemarketing calls (or texts) may be made using an autodialer and that (2) the individual's consent to those calls is not required to make a purchase. 47 C.F.R. at § 64.1200(f)(8). A defendant must establish that it clearly disclosed "the consequences of providing the requested consent . . ." and that the plaintiff, "having received this information, agree[d] unambiguously to receive such calls at a telephone number the [plaintiff] designate[d]." 2012 FCC TCPA Order at ¶ 32. The seller bears the burden of showing the disclosure was provided and unambiguous consent was obtained. *Id.*

Non-emergency, non-telemarketing calls require "prior express consent." *Rules & Reg.s Implem. the TCPA of 1991*, 30 FCC Rcd 7961 (10), ¶¶ 4, 9, 39, 52 (FCC July 10, 2015) (hereinafter "2015 FCC TCPA Order"). "[A]ny telephone subscriber who releases his or her telephone number" to a certain entity has "given prior express consent to be called by the entity to which the number was released." *Rules and Reg.s Implem. the TCPA of 1991*, 7 FCC Rcd 8752 (26), ¶ 30 (FCC October 16, 1992) (hereinafter "1992 FCC TCPA Order"). However, the FCC warned that "if a caller's number is 'captured' by a CallerID . . . without notice to the residential telephone subscriber, the caller cannot have been considered to have given an invitation or permission to receive autodialer . . . calls." *Id.* at ¶ 31. "[C]onsumers who provide a wireless phone number for a limited purpose . . . do not necessarily expect to receive telemarketing calls that go beyond the limited purpose . . . ." 2012 FCC TCPA Order at ¶ 25.

The caller must prove consent under the TCPA. "We expect that responsible callers, cognizant of their duty to ensure that they have prior express consent under the TCPA and their

burden to prove that they have such consent, will maintain proper business records tracking consent." 2015 FCC TCPA Order at ¶ 70. "Consumers . . . do not bear the burden of proving that a caller did not have prior express consent for a particular call." *Id.*

### F. 47 U.S.C. §§ 227(b)(3); 227(c)(5) - National Do Not Call Registry

National Do Not Call Registrants who receive "more than one" telephone solicitation "within any 12-month period by or on behalf of the same entity" may bring claims. 47 U.S.C. § 227(c)(5). The FCC "presume[s] wireless subscribers . . . on the national do-not-call list to be 'residential subscribers.'" *Rules & Reg.s Implem. the TCPA of 1991*, 18 FCC Rcd 14014 (20), ¶ 36 (FCC July 3, 2003) (hereinafter "2003 FCC TCPA Order"). Further, Do Not Call protections extend to home-based businesses. 2005 FCC TCPA Order at ¶ 14. (The FCC "declines to exempt from the do-not-call rules those calls made to 'home-based businesses.'")

### G. 47 U.S.C. § 217 - Individual Corporate Officer Liability Under the TCPA

47 U.S.C. § 217 provides that the "act, omission, or failure… of any officer… acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure… of such carrier or user as well as of that person." *Id.*

Other courts have agreed, finding that "corporate actors may be held individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Roylance v. ALG Real Estate Servs.*, 2015 U.S. Dist. LEXIS 44930, at *19 (N.D. Cal. Mar. 16, 2015) (internal quotes and citations omitted). "Courts have generally imposed liability upon individual defendants based upon their status as employees of an entity that committed TCPA violations when those defendants had significant authority over the corporation that committed the TCPA violations." *Id.* Corporate officers are liable when they "set company policies and oversee day-to-day operations and thus were clearly involved in the business practices that led to the unlawful conduct," or "were the guiding spirits and the central figures behind the TCPA violations." *Id.* at *20 (internal quotations and citations omitted). Further, "[v]icarious liability is appropriate when the plaintiff can demonstrate that a defendant controlled or had the right to . . .  the manner and means of

the telemarketing campaign [the entity] conducted." *Id.* at \*\*12–13 (internal citations and quotations omitted).

## IV.  ARGUMENT

### A.   Plaintiffs Have Article III Standing Under FRCP 12(b)(1)

The Court has subject matter jurisdiction because Plaintiffs' claims arise from a federal statute—the TCPA. Plaintiffs have standing under Fed. R. Civ. P. 12(b)(1) because they have alleged an "injury-in-fact that is (1) concrete and particularized," traced to the Defendants, which can be redressed by the Court's favorable ruling. *Monsanto,* 561 U.S. at 149; *see also Krottner*, 628 F.3d at 1141, *supra* § III. A. GoSmith's telemarketing calls have invaded Plaintiffs' privacy and "are a concrete injury in fact" "by their nature." *Van Patten*, 847 F.3d at 1042–43 (9th Cir. 2017) (Stating that "[a]s the Supreme Court explained in *Spokeo*, both history and the judgment of Congress play important roles in supporting our conclusion that a violation of the TCPA is a concrete, de facto injury.") Plaintiffs have each alleged receiving at least two unwanted autodialed telemarketing messages within a 12 month period, sent by Defendants. Compl. at ¶¶ 10–57. Furthermore, the Court has authority to grant Plaintiffs' requested relief. *Id.* at ¶¶ 103–109; 47 U.S.C. §§ 227(b)(3)(B), 227(c)(5)(B). Plaintiffs specify their claims on Exhibit A, pending further discovery to clarify the total number of Defendants' calls. The pleading requirement is relaxed "where the relevant facts are known only to the defendant." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

Defendants' argument that Plaintiffs' privacy rights were not injured is a legal argument about what standard of consent applies. The FCC has been very clear in this regard. Consent must be prior, express, written, and particularized to Defendants. *See* 2012 FCC TCPA Order at ¶¶ 18, 20, 32-33. If it does not meet that standard, Plaintiffs have been injured in exactly the way the TCPA sought to prevent. *Van Patten*, 847 F.3d at 1043. Plaintiffs have alleged that Defendants sent them telemarketing messages that the Plaintiffs never gave prior express written consent to receive from Defendants. Defendants' claim an affirmative defense, which does not invalidate the sufficiency of Plaintiffs' claims under 12(b)(1). Whether Defendants obtained the appropriate consent is a question of fact that must be resolved in Plaintiffs' favor.

"All allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The legal question of which standard of consent to apply depends on whether the messages were telemarketing and cannot be resolved at this stage of the proceedings. Plaintiffs' allegations confer standing.

### B.     Plaintiffs Sufficiently Alleged Personal Jurisdiction Under FRCP 12(b)(2)

Plaintiffs sufficiently pled that Ehrlichman, Marrelli and Widjaja purposefully directed their activities at Idaho. Plaintiffs also alleged claims against Ehrlichman, Marrelli and Widjaja that arise out of, and relate to, their forum-related activities. It is both fair and reasonable to hold these corporate officers accountable within Idaho. Therefore, Plaintiffs have pled a *prima facie* case and the Court may properly exercise jurisdiction over these officers.

Courts make a determination as to "whether a defendant purposefully direct[ed] his activities at the forum state" by "applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Schwarzenegger*, 374 F.3d at 802. "The 'effects' test … requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Marvix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).

In *Moser v. Health Ins. Innovations, Inc.*, the court held that "[t]he effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code. In such a case, the plaintiff's TCPA claim 'arises out of or relates to the defendant's forum-related activities[] and [] the exercise of jurisdiction comports with fair play and substantial justice, i.e. it [is] reasonable.'" 2018 WL 325112, *4 (S.D. Ca. Jan. 5, 2018) (citing *Marvix*, 647 F.3d at 1227-28 (9th Cir. 2011)).

Plaintiffs alleged that Ehrlichman, Marelli and Widjaja had control over the company, knew of the telemarketing scheme that sent 7,527 telemarketing messages to Idaho residents, and intentionally directed and allowed it to continue. Compl. at ¶ 45. Ehrlichman is the CEO of Porch and GoSmith. *Id.* at ¶¶ 43–46, 54. Brenton Marrelli is a co-founder of GoSmith, and lists himself as a CEO and Governor. *Id.* at ¶¶ 37–43. Darwin Widjaja is a co-founder and CTO of

GoSmith and lists himself as VP of Porch. *Id*. at ¶¶ 38–41; 51(E), 54. These officers acted in positions of control over the companies, authorizing and directing the marketing campaigns which harmed Plaintiffs under the TCPA. *Id.* at ¶ 56–57. There can be no doubt that Marrelli and Widjaja were aware that GoSmith engaged in telemarketing campaigns identical to the ones complained of here, since they produced sworn statements regarding their personal knowledge and involvement in at least one of the ten previous TCPA suits. Ex. C–D to Compl. [Dkt ##2-4, 2-5]. Further, as GoSmith's controlling corporate officers, Ehrlichman, Marrelli and Widjaja indisputably had authority to control those telemarketing campaigns and to authorize or curtail those operations. They had actual knowledge that TCPA violations could result in claims being brought against them in whatever jurisdiction they directed those violations toward, including Idaho. Yet they directed the campaigns to continue. Like the claims in *Moser*, these allegations are sufficient to satisfy the "effects test." Further, like the claims in *Moser*, Plaintiffs claims arise from Defendants' forum-related activities and the exercise of jurisdiction comports with fair play and substantial justice.

Plaintiffs have made a prima facie showing of personal jurisdiction over the corporate officers. Defendants have not controverted these allegations with a single affidavit or sworn declaration showing they were not involved in the TCPA violations. This is insufficient to overcome Plaintiffs' allegations, which must be taken as true for purposes of the motion to dismiss. *Epstein*, 83 F.3d at 1140. Plaintiffs' allegations establish personal jurisdiction through purposeful direction. Defendants' motion to dismiss on this ground should be denied.

**C.    Plaintiffs Sufficiently Alleged TCPA Claims Under FRCP 12(b)(6)**

Plaintiffs have prudential standing and have sufficiently stated claims for relief from TCPA violations under Fed. R. Civ. P. 12(b)(6). Plaintiffs are within the "zone of interest" Congress identified when creating these private rights of action under the TCPA. Plaintiffs have alleged that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer*, 707 F.3d at 1043 (citing 47 U.S.C. § 227(b)(1)); 47 C.F.R. § 64.1200(a)(1) & (2). Further, those Plaintiffs who have asserted Do Not Call violations have sufficiently stated their claims for relief,

alleging that they registered on the Do Not Call list and qualify for its protection and received more than one call in a twelve-month period. 47 U.S.C. § 227(c)(5); 2003 FCC TCPA Order at ¶ 36; 2005 FCC TCPA Order at ¶ 14; Compl. at ¶¶ 11–12; Ex. A. to Compl..

### 1. Plaintiffs have prudential standing.

Plaintiffs have prudential standing under Rule 12(b)(6) because they are exactly the kind of plaintiffs within the "zone of interest" that the TCPA is designated to protect, providing a right of action for privacy violations. 47 U.S.C. §§ 227(b)(2)(B)(ii)(I), 227(b)(3). Additionally, any residential Do Not Call Registry subscriber who receives more than one telephone solicitation "within any 12-month period by or on behalf of the same entity" may bring an action for damages. 47 U.S.C. § 227(c)(5). Plaintiffs need not allege any additional harm beyond the one Congress has identified to demonstrate prudential standing. Plaintiffs have received texts in violation of both statutory provisions, and are within the "zone of interest" necessary to confer standing.

Defendants sent over 7,527 automated telemarketing text messages to Plaintiffs without prior express written consent even after Plaintiffs were registered on the National Do Not Call list. Compl. at  ¶¶ 10–12, 27; Exh. A to Compl.. Registration on the Do Not Call list is a prima facie showing that Defendants' messages were unwelcome. Each Plaintiff alleged that they are residential subscribers. *Id*. at  ¶ 11. These phone numbers are registered to the individual Plaintiffs. Plaintiffs "need not allege any additional harm beyond the one Congress has identified." *Van Patten*, 847 F.3d at 1042 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1549). Thus, Plaintiffs have experienced actual, particularized privacy invasions due to Defendants' tortious actions, and are within the TCPA's "zone of interest."

### 2. Plaintiffs sufficiently alleged all factual elements of an ATDS claim.

Plaintiffs' allegations survive a 12(b)(6) challenge because Plaintiffs pled "enough facts to state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 570) which "allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs must only allege that they received, on a residential phone, at least one non-emergency call using an automatic telephone dialing system or an

artificial or prerecorded voice without having obtained the prior express consent of the called party. See 47 U.S.C. § 227(b)(1)(A)(iii).

First, each Plaintiff alleged that they received calls from Defendants on their residential lines. Compl. at ¶¶ 10–11, 17 [Dkt # 2].

Second, each Plaintiff alleged significantly more than one ATDS violation and even listed the dates they began to receive these calls on their phones (or the date to which the statute of limitations applied). Compl. at ¶ 10; Exh. A to the Compl. (columns labeled "Messages Started" and "ATDS Messages"). Because the full number of violations is known only to Defendants, the lowest commonly-reported number of texts per week (two) were used to calculate a reasonable estimate of damages. A complete calculation of damages will only be possible once discovery has revealed the full number of violations. Even in cases where fraud is alleged, the pleading requirement is relaxed "where the relevant facts are known only to the defendant." *Concha*, 62 F.3d at 1503. The allegations made in the Complaint (incorporating Exhibit A) are reasonable and are sufficient to state a claim. One alleged call would be sufficient (see *Van Patten*, 847 F.3d at 1042–43).

Third, Plaintiffs specifically alleged that Defendants sent these messages using an ATDS. Compl. at ¶¶ 10, 16–27. ("GoSmith has sent 7,527 text messages to Plaintiffs using an Automatic Telephone Dialing System." "GoSmith sent an automated response." "This clearly is an automated system gone awry." "GoSmith knowingly and willfully sent the text messages using an automatic telephone dialing system.")

Fourth, Plaintiffs have alleged that Defendants did not obtain consent prior to sending the messages. *Id* at ¶¶ 27–28. The Complaint alleges specifically, with factual support, that GoSmith obtained Plaintiffs' residential numbers by scraping third-party websites, not by obtaining prior express written consent from Plaintiffs to message them. *Id.* at ¶¶ 14–15, 27. *See also* Exhibit B to the Compl.. Plaintiffs have met their burden to plead their ATDS claims under 47 U.S.C. § 227(b).

### 3.   Plaintiffs sufficiently alleged that the texts were telemarketing.

Plaintiffs specifically alleged that these calls were made for telemarketing purposes. Telemarketing, under the TCPA, is any message "transmitted to any person" "for the purpose of encouraging the purchase" of "property, goods, or services. . ." 47 C.F.R. § 64.1200(f)(12).

Plaintiffs specifically alleged that Defendants' business model "is to sell leads to home improvement contractors" and that "GoSmith was selling leads. . . the text messages were business solicitations and constitute telemarketing." Compl. at ¶¶ 13, 35. Plaintiffs also alleged and provided screenshots of messages sent by GoSmith that say, "Our system runs on appointment credits. 1 credit is $8." *Id*. at ¶¶ 24, 34. "None of the text messages asked Plaintiffs if they wanted to come work for Defendants or offered Plaintiffs employment." *Id*. at ¶ 36. Plaintiffs were not required to plead facts supporting their allegations that these calls were made for telemarketing purposes to state a sufficient claim for an ATDS violation, but they have done so anyway. Telemarketing is only relevant insofar as it goes to the issue of consent, which Plaintiffs have also asserted they did not provide. *Infra* § IV.C.4.

Whether the messages were telemarketing goes to the standard of consent which the court should eventually apply in deciding the merits of the case, not the sufficiency of the ATDS allegations. If the messages were telemarketing, prior express written consent is necessary. If not telemarketing, Defendants must still show that they obtained Plaintiffs' prior express consent. A 12(b)(6) challenge tests the legal sufficiency of a claim and is not an adjudication of the merits of the case, and "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party.'" *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997). While the court is not required to accept every conclusion drawn by Plaintiffs as true, the court "will examine whether the conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). "A complaint should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *Parks*, 51 F.3d at 1484 (citing *Everest*, 23 F.3d at 228 (9th Cir. 1994)). Defendants have not contested Plaintiffs' recitation of the content of their messages, nor offered evidence to support

their legal conclusion that the messages were not telemarketing. Even if they had provided affidavits or evidence to that end, factual disputes must be resolved in favor of the non-moving party. *Wyler Summit Pshp.*, 135 F.3d at 661. All that must be decided at this stage of the proceedings is whether Plaintiffs' allegations are sufficient to state a ATDS claim. Plaintiffs have described facts that support the allegation that each Plaintiff received more than one ATDS telemarketing message from Defendants. (The allegations that the messages were telemarketing are not necessary to state an ATDS claim and only bolster Plaintiffs' DNC claims and allegations that Defendants lacked any form of consent).

### a.   Defendants' telemarketing arguments are not applicable.

A valid ATDS claim does not require telemarketing allegations. However, because Defendants conflate the issues of telemarketing (not an element of the claim) and consent (which is Defendant's burden to prove), Plaintiffs will discuss them here. In particular, Defendants' citation of *Dolemba v. Illinois Farmers Ins. Co*. presents a question of credibility that should be addressed.  Defs.' Memo. in Support of Mot. to Dismiss at 14 [Dkt # 18-1] (mis-citing *Dolemba v. Illinois Farmers Ins. Co*., 2015 U.S. Dist. LEXIS 104314 *2 (N.D. Ill. Aug. 10, 2015)). Plaintiffs have contested this misrepresentation of Dolemba's holding in two related cases. Opp. to Mot. to Dismiss at 16 [Dkt #37], *Cain et al v. Porch.com Inc. et al*, 5:20-cv-00697-BLF (N.D Cal. 2020); Opp. to Mot. to Dismiss at 17 [Dkt # 44], *Seale et al v. GoSmith, Inc.*, 5:19-cv-08389-BLF (N.D. Cal. 2019). Defendants insist on repeating it here. Defendants' quotation comes from the plaintiff's posture in *Dolemba,* not from the court's holding. The *Dolemba* court simply held that the plaintiff had "not adequately alleged" his stated claims, having provided almost no evidence in support. *Dolemba*, 2015 U.S. Dist. LEXIS 104314 at **9–10, 13–14. Further, the *Dolemba* court stated: "the telemarketing inquiry focuses on the purpose of the call, rather than its content. . . . The TCPA does not require an explicit mention of a good, product or service, where the implication of an improper purpose is clear from the context." *Id*. at **10–11 (internal quotations omitted) (citing *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) and *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). The *Dolemba* court took pains to recite *Golan*, in which the

Eighth Circuit held that a short voicemail message was "telemarketing" because the purpose of the call was to encourage consumers to purchase tickets to see a movie, even though the call "did not mention property, goods, or services." *Golan*, 788 F.3d at 819–20.

Defendants also cite multiple cases (in a footnote) whose facts are inapposite. Defs.' Memo. in Support of Mot. to Dismiss at 21 n.8. Unlike the parties in these cases, Defendants' messages were expressly aimed at initiating a "future commercial transaction." *E.g. Friedman v. Torchmark Corp.*, 2013 U.S. Dist. LEXIS 54020, at **11–12 (S.D. Cal. Apr. 16, 2013). Plaintiffs here were never notified of job openings at GoSmith or given an "opportunity to sell [GoSmith's] goods" nor any other type of "offer of employment" with Defendants. *Id.*; *compare with* Compl. at ¶¶ 34, 36. This case is also distinguishable from *Reardon v. Uber Technologies, Inc.*, in which Uber repeatedly contacted potential drivers to recruit them after they knowingly gave Uber their cell phone numbers. 115 F. Supp. 3d 1097–99 (N.D. Cal. July 19, 2015). Here, Plaintiffs did not give Defendants their phone numbers, yet GoSmith still peddled leads, soliciting Plaintiffs to purchase their wares. Compl. at ¶¶ 27, 33–36. Defendants were not recruiting Plaintiffs to work for them as employees or independent contractors.

Finally, Defendants misapply the 2006 FCC ruling, which only applies to fax messages. *See* Defs.' Memo. in Support of Mot. to Dismiss at 22. The full quote states "messages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements for purposes of the TCPA's facsimile advertising rules." *Rules & Reg.s Implem. the TCPA of 1991*, 21 FCC Rcd 3787 (4), ¶ 49 (FCC April 6, 2006) (emphasis added). Such messages "must relate specifically to existing accounts and ongoing transactions. Messages regarding new or additional business" or services "would be covered by the prohibition." *Id*. at ¶ 50. Thus, even if Defendants' citation applied to text messages, the texts at issue would still be prohibited. Defendants have incorrectly concluded that their messages were not telemarketing.

### 4.  Plaintiffs sufficiently alleged that Defendants lacked consent.

Plaintiffs have thoroughly alleged that they did not give their phone numbers to Defendants, nor did Defendants obtain their express consent. Compl. at ¶ 27. Defendants'

pretense of an "ongoing business transaction" with Plaintiffs is simply that—a pretense. Instead of addressing the relevant standards for consent, Defendants raise a straw man, arguing that the existence of Plaintiffs' numbers on a website amounts to a request for Defendants' text messages. See *e.g.*, Defs.' Memo. in Support of Mot. to Dismiss at § III.A.2; E.2.. Defendants do not dispute Plaintiffs' allegations that they obtained Plaintiffs' contact information by scraping third party websites such as BBB and Yelp. Rather, Defendants hope to distract the Court by presenting irrelevant evidence, and request that the Court take judicial notice (in a footnote) of a few websites and their proximity to the area Defendants targeted with their advertising. Plaintiffs object to this request for judicial notice (*Id.* at 13 n.2) [Dkt. #18-1] and also object to the exhibits Defendants propose the court take judicial notice of (Decl. of Kristin E. Haule with Exhibits 1 through 6) [Dkt #18-2 through 18-8]. The material offered does not satisfy the requirement that evidence be relevant in order to be admissible. Fed. R. of Evid. 401, 402. It is irrelevant to the purpose for which it is offered: it does not go either to the standard of consent (which should be raised in a responsive pleading) or to Defendants' invasion of Plaintiffs' privacy (the issue of standing). The argument that third-party websites containing the phone numbers of some Plaintiffs was an invitation for Defendants' texts is specious at best. Defendants cannot manufacture consent from websites they only became aware of this July, long after the suit was filed. *See* Decl. of Kristin E. Haule at 2–3. GoSmith had no website on file for Plaintiff Chenette as recently as January 27, 2020.[2] GoSmith originally took Chenette's personal number from a client review left on Angie's List, which GoSmith associated with Chenette's home-based business. Chenette himself did not post his number on this review and GoSmith's capture of his mobile number from a third-party review does not meet Defendants' burden to demonstrate consent. If merely capturing the Caller ID of

---

[2] GoSmith's own records show that they scraped Angie's List website to obtain Nathan Chenette's personal information on April 2, 2019, which they tried to attach to his business name, but which their program got wrong. ("Contact Idaho Painting & Epoxy" instead of "Idaho Painting & Epoxy.") Redacted Exh. B to Compl. at 2 [Dkt #5]. As recently as January 27, 2020 the value for the field "Url" was set to "null," proving that GoSmith had no personal website on file for Chenette. *Id.*; Decl. of Thomas Alvord at ¶ 2 [Dkt. #2-1].

MEMO. IN OPP. TO MOT. TO DISMISS - 17

an inbound call is insufficient to constitute obtaining consent (1992 FCC TCPA Order at ¶ 31), capturing an individual's phone number from a web review is clearly deficient.

Consent is not an element of Plaintiffs' prima facie case, and if Defendants choose to raise it in their answer, it does not affect the sufficiency of Plaintiffs' pleadings. *See* Fed. R. Civ. P. 12(b). However and whenever it is raised, Defendants bear the burden of proof. *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 498, 600 n.1 (9th Cir. 2011). Defendants must prove that they previously obtained from Plaintiffs the requisite consent for each particular call. See 2012 FCC TCPA Order at ¶¶ 18, 20, 32-33; 2015 FCC TCPA Order at ¶ 70.

Defendants cite the outdated pre-2013 standard for "prior express consent" and not the current standard for "prior express written consent." *See e.g., Pinkard v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 160938, at *10 (N.D. Ala. Nov. 9, 2012) (in which the court noted that "[e]xpress written consent [was] not yet required") (cited in Defs.' Memo. in Support of Mot. to Dismiss at 23, 24 n.10). And the post-2013 cases Defendants cite are easily distinguished. In *Edelsberg v. Vroom*, when an individual posted online seeking buyers for his car, a dealer texted him about the car's value. 2018 U.S. Dist. LEXIS 50420 at **11–13 (S.D. Fla. Mar. 27, 2018). In contrast, GoSmith initiated contact with each Plaintiff, repeatedly trying to sell leads. Compl. at ¶¶ 33–36. Lastly, in *Winner v. Kohl's Dep't Stores Inc.*, when shoppers texted Kohl's after seeing ads that said they would receive auto-dialed texts, the court concluded that Kohl's reminders that an ATDS would be used, and of how many texts they would receive (and how to view the terms and conditions and unsubscribe) qualified as "clear and conspicuous" disclosures to which the consumer had consented. 2017 U.S. Dist. LEXIS 131225 **6–9, 17–23 (E.D. Pa. August 17, 2017). Here Plaintiffs did not initiate contact and Defendants made no disclosures nor obtained consent.  Plaintiffs have more than satisfied their burden to show Defendants lacked consent.

### 5.   Plaintiffs sufficiently alleged Do-Not-Call violations.

The TCPA provides a right of action for any residential telephone subscriber on the National Do Not Call Registry who has received more than one telephone solicitation "within any 12-month period by or on behalf of the same entity." See 47 U.S.C. §§ 227(b)(3),

227(c)(5). Do Not Call Registry protections apply to home-based businesses. See 2005 FCC TCPA Order at ¶ 14; *supra* § III.F.  Plaintiffs alleged the exact date they placed their residential numbers on the National Do Not Call Registry. Compl. at ¶ 11; Exhibit A at 2–5 (column "Do Not Call Registration"). Finally, 37 Plaintiffs specifically pled that they "received more than one text message from GoSmith within a 12-month period" (Compl. at ¶ 12; see Exh. A to Compl.), and that these messages were telemarketing solicitations. *Supra* at § IV.C.3; see Compl. at ¶¶ 13, 33–35. Plaintiffs have clearly alleged Do Not Call violations under the TCPA.

Each Plaintiff personally registered his or her phone number on the Do Not Call Registry and stated the exact date of registration. *Id*.; Exh. A to Compl. Moreover, the FTC "checks all telephone numbers in the Registry once a month against national databases to remove any disconnected and reassigned numbers." *Rules & Reg.s Implem. the TCPA of 1991*, 23 FCC Rcd 9779 (11), ¶ 12 (FCC June 17, 2008). Even Defendants' own cited authorities state that "courts permit[] discovery" to determine usage when plaintiffs allege home-based business telephone use. *Mattson v. Quicken Loans Inc.*, 2019 U.S. Dist. LEXIS 225872 at **13-14 (D. Or. 2019); *Mattson v. New Penn Financial, LLC*, 2019 U.S. Dist. LEXIS 225821 at **10-12 (D. Or. 2019).

### 6.   Plaintiffs sufficiently alleged corporate officer liability.

The TCPA provides that the "act, omission, or failure . . . of any officer . . . acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure . . . of such carrier or user as well as of that person." 47 U.S.C. § 217. Plaintiffs alleged that GoSmith and Porch utilized common carriers to engage in telemarketing (Compl. at ¶¶ 18–19) and that Defendants Ehrlichman, Marrelli, and Widjaja "had significant authority" at GoSmith and "overs[aw] day-to-day operations." *Roylance*, 2015 U.S. Dist. LEXIS 44930, at **19–20. Marrelli and Widjaja specifically testified that they are "involved in nearly every facet of GoSmith's operations and have comprehensive personal knowledge of GoSmith's business model and internet operations." Compl. at ¶¶ 37–38; Exh. C–D to Compl.. These Declarations are under oath, timely, relevant, and fully admissible, confirming that they were

the "guiding spirits and the central figures" behind GoSmith's TCPA violations, and thus are liable. *Roylance*, 2015 U.S. Dist. LEXIS 44930, at *19.

## V.   CONCLUSION

Plaintiffs have plausibly alleged injuries-in-fact sufficient to establish Article III and Rule 12(b)(6) standing under the TCPA. The Motion to Dismiss should be denied. Defendants sent Plaintiffs unwanted and unsolicited telemarketing calls which invaded their privacy, harming them in the exact manner that Congress and the FCC designed the TCPA to redress. Plaintiffs have sufficiently alleged that Defendants are responsible for 7,527 automatic telemarketing violations. Plaintiffs have shown that Defendants' messages were telemarketing. Defendants have failed to provide any evidence that they obtained Plaintiffs' "prior express written consent." The complaint properly alleged 2,754 violations of the National Do Not Call Registry for residential numbers associated with home-based businesses. Finally, Plaintiffs have sufficiently pled allegations and factual support to name Marelli, Widjaja, and Ehrlichman as Defendants.

Plaintiffs respectfully ask the Court to deny Defendants' Motion to Dismiss.

Date: August 5, 2020                              Respectfully submitted,

/s/ *Rafael Icaza*
Rafael Icaza (Idaho Bar No. 10912)

/s/ *Rebecca Evans*
Rebecca Evans, (PHV, UT #16846)

*Attorneys for Plaintiffs, listed below*

MEMO. IN OPP. TO MOT. TO DISMISS - 20

## LIST OF PLAINTIFFS

| | | |
|---|---|---|
| Larry Akins | Greg Dodgson | Nick Miller |
| Gary Alger | Briana Ethington | Gabriel Miranda |
| Gabriel Anguiano | Jonathon Forsythe | Alfonso Miranda |
| Joshua Barkdull | David Frost | Michael Monzo |
| R.B. Beal | Scott Glubay | James Payne |
| Rory Bond | Stryder Hartley | Robert Pelcher |
| Vadim Bondar | Joseph Hartsough | Sean Priest |
| Christopher Borges | Andrea Hatch | Kyle Robb |
| Charlene Branham | Nathaniel Hood | John Rowe |
| Roger Burt | Nicholas Jones | Jake Rozsa |
| Adam Byerley | Tom Keffer | Ron Schaefer |
| Nathan Chennette | Roger Kennedy | Owen Shaw |
| Stefanie Christopherson | Michael Larson | George Simmons |
| Jason Coulter | Jonah Lucht | Michael Smith |
| Travis Crone | Christian Lyness | Levi Stoddard |
| Jose de la Mora | Jonathan McCormick | Jeremy Vogel |
| Steven Dick | April Michael | Nicole Wood |

## CERTIFICATE OF SERVICE

I certify that on the 5th day of August, the above **MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS [DKT. 18]** was electronically filed and served on all counsel of record in the above-entitled matter via the Court's CM/ECF filing service.


Date: August 5, 2020


/s/ *Rafael Icaza*
Rafael Icaza (Idaho Bar No. 10912)

/s/ *Rebecca Evans*
Rebecca Evans, (PHV, UT #16846)

*Attorneys for Plaintiffs, listed above*

MEMO. IN OPP. TO MOT. TO DISMISS