Rafael Icaza (Idaho Bar No. 10912)
Rebecca Evans (PHV, UT #16846)
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Phone: (385) 233-6612 ext. 3152
rafaelicaza@lawhq.com
rebecca@lawhq.com

*Attorneys for Plaintiffs, listed below*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Nathan Chennette**, et al, <br><br> Plaintiffs, <br><br> v. <br><br> **Porch.com Inc.,** a Delaware corporation; **GoSmith Inc.** a Delaware corporation; **Matthew Ehrlichman**, CEO and co-founder of Porch.com Inc. and CEO of GoSmith, Inc., in his individual capacity; **Brenton Marrelli**, CEO and co-founder of GoSmith Inc., in his individual capacity; and **Darwin Widjaja,** CTO and co-founder of GoSmith Inc. and VP of Porch.com Inc., in his individual capacity, <br><br> Defendants. | Civil Case No.: 1:20-cv-00201-SRB <br><br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT [DOCKET 24]** <br><br><br> Judge Stephen R. Bough |

Pursuant to Fed. R. Civ. P. 59(e) & Dist. Idaho Loc. Civ. R. 7.1, Plaintiffs, through counsel, file this Opposed Motion to Alter Judgment. Plaintiffs respectfully request this Court reconsider the recent Order dismissing Plaintiffs' claims with prejudice [Docket #24] and alter its judgment.

**MEMORANDUM**

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 1
1:20-cv-00201-SRB

I.      **INTRODUCTION**

It is clear from the Court's decision that the Court misunderstood the law that applies in this matter and the facts of the case. The Order misstated and misapplied the law and the facts in several ways. First, Plaintiffs filed suit under two *separate* subsections of the Telephone Consumer Protection Act ("TCPA")—namely, 47 U.S.C. 227(b) and 47 U.S.C. 227(c). Both subsections protect distinct rights and interests, yet the Court's Order incorrectly conflated the two as having the same zone of interest. Dismissal of one claim under the TCPA does not necessarily invalidate other claims properly asserted under another subsection of the TCPA. Second, the Court stated incorrectly that the TCPA applies only "to consumers, not business numbers like cell phones used by contractors." Order at 4, Dkt. #24. However, the TCPA has at least four provisions which protect business numbers to varying degrees, and cell phones are protected *completely* from autodialed calls and prerecorded messages, whether they are personal or business numbers. Third, the case the Court relied on for the proposition that Congress did not intend for the TCPA's protections to extend to businesses is entirely inapposite. A careful reading shows that the court in *Stoops* merely held that the TCPA does not protect a serial plaintiff who obtains some 30+ phone lines for the sole purpose of manufacturing TCPA claims (making serial litigation her "business"). *Stoops v. Wells Fargo Bank, N.A.,* 197 F. Supp. 3d 782 (W.D.Pa. 2016). Fourth, the FCC ruling cited by the Court on page 3 and 4 states on its face that home-based business numbers *are* protected under the Do Not Call regulations, albeit using a double-negative ("We also decline to exempt from the do-not-call rules those calls made to 'home-based businesses.'"). *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788 (5), ¶14 (FCC February 18, 2005) (hereinafter "2005 FCC Order"). The assertion that the 2005 FCC Order allowed calls to home-based businesses is bewildering and incorrect. Fifth, the Court conflates business numbers (a telephone number registered to a business) with residential numbers also used in a home-based business (a telephone number registered to an individual such as a farmer, someone who does consulting on the side, or a homemaker who sells essential oils or makeup, etc.). Finally, the Court failed to

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 2
1:20-cv-00201-SRB

take the following factual allegations stated by Plaintiffs' in their Complaint as true for the purposes of the motion to dismiss: 1) that Plaintiffs' cellular numbers were residential numbers and 2) that Defendants had autodialed those cellular numbers.

In short, the district court established an entirely new and erroneous legal principle, applied a faulty analysis, and wrongfully anticipated fact finding. Reconsideration is appropriate under Federal Rule of Civil Procedure 59(e) due to 1) the finality of the dismissal, 2) plain error, and 3) the mistakes of law and fact apparent in the Court's Order. To prevent the irreparable harm which would be caused by dismissing Plaintiffs' claims with prejudice, Plaintiffs bring this motion and respectfully urge the Court to review the law and facts and alter its judgment.

## II.  FACTS

On April 25, 2020, 51 Plaintiffs filed their complaint, alleging that Defendants sent automated telemarketing text messages to their *personal, residential cell phones*. Complaint at ¶¶ 11, 17. [Dkt. #2] The phones are registered as residential lines and are Plaintiffs' primary or only home phone. Many of the Plaintiffs have registered their personal cell phone numbers—the numbers Defendants called and/or texted—on the National Do Not Call Registry. *Id.*, *see also* Exhibit A. Plaintiffs also use their personal residential numbers for their home-based businesses. *Id.* at 11. Defendants filed a Motion to Dismiss, arguing that plaintiffs were outside the zone of interest and lacked prudential standing. Motion to Dismiss, passim [Dkt. #18]. Defendants further claimed that Plaintiffs' invited Defendants calls. *Id*. Judge Stephen R. Bough, from the Western District of Missouri, was assigned to this case on September 1, 2020. [Dkt. #23]. On September 2, 2020, the Court dismissed the case with prejudice, granting Defendants' Motion and stating that Plaintiffs lacked prudential standing because business numbers "are not covered under the TCPA." Order at 4 [Dkt. #24]. Plaintiffs timely filed this 59(e) motion on September 24, 2020. [Dkt. #25].

## III.  LEGAL STANDARD

A motion to alter or amend judgment is governed by Federal Rule of Civil Procedure ("FRCP") 59. "Under Rule 59(e), it is appropriate to alter or amend a judgment if '(1) the

district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law.'" *United Nat. Ins. Co. v. Spectrum Worldwide*, 555 F.3d 772, 780 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)). A district court commits clear error where its decision "[is] based on an inaccurate view" of the applicable law. *See, e.g.*, *Chioino v. Kernan*, 581 F.3d 1182, 1185-86 (9th Cir. 2009).

IV. **ARGUMENT**

The Court committed clear error in holding that "Plaintiffs do not fall within the zone of interest" for the TCPA, that they "lack standing to sue" and that "the FCC's intent is for the TCPA to apply to consumers, not business numbers. . ." Order at 4, Dkt. #24. The Court's decision is based on an inaccurate reading of the law applicable to TCPA claims. As such, the Court committed clear error and the judgment should be altered and/or amended.

A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten*, 847 F.3d at 1042 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). The zone-of-interest inquiry asks whether a "particular class of persons ha[s] a right to sue under this substantive statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). "Identifying the interests protected" by a statute "requires no guesswork" where the act provides a "detailed statement of the statute's purposes." *Id.* at 131. "The purpose of the zone of interests test is 'to exclude those plaintiffs whose suits are more likely to frustrate than to further statutory objectives.'" *Am. Indep. Mines*, 1241, 1250 (D. Idaho 2010) (quoting *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 397 n. 12 (1987)). We look, then, to the statute to determine its objectives and Plaintiffs' potential claims.

The Telephone Consumer Protection Act (47 U.S.C. § 227; 47 C.F.R. § 64.1200) imposes various restrictions on telephone calls, of which the following is a partial list: 1) prohibitions on autodialers and prerecorded messages (47 U.S.C. § 227(b)(1)(A)(iii)); 2) prohibitions on dialing residential subscribers listed on the national do-not-call registry (47 U.S.C. § 227(c)); 3) prohibitions on dialing more than one line of a multi-line business simultaneously (47 U.S.C. §

227(b)(1)(D)); and 4) prohibitions on sending unsolicited advertisements to fax machines (47 U.S.C. § 227(b)(1)(C)). The TCPA protects **both** consumer and business interests.

Plaintiffs have filed suit under subsections 227(b) and 227(c) of the Telephone Consumer Protection Act, which both independently provide a private right of action. The first, 227(b), regulates automated calls. The second, 227(c), regulates telemarketing calls to residential telephone subscribers. These two subsections protect different interests. An analysis of 227(b) and 227(c) shows that Plaintiffs fall within both subsections' zone of interest.

### 1. The 227(b) Zone of Interest: Autodialed Calls to Any Cell Phone

The Court committed clear error in holding Plaintiffs "do not fall within the zone of interests" of the TCPA "and lack standing to sue." Order at 4, Dkt. #24. Contrary to the Court's holding, the law is clear that Plaintiffs fall within the zone of interest for 227(b) for four reasons: (1) the statutory text makes clear that 227(b) applies to "any call" made "to any … cellular telephone"; (2) Congress intended and provided for business entities to be protected from autodialed calls and artificial or prerecorded voices under 227(b); and (3) every other court that has analyzed whether businesses fall within 227(b)'s zone of interest has concluded that they do.

First, the statutory text provides that: No person or entity shall "make *any call*… using an automatic telephone dialing system or an artificial or prerecorded voice… *to any… cellular telephone*" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)-(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) (protecting not only anyone with a cell phone but also hospitals, medical offices, health care facilities, elderly homes, and other businesses) (emphasis added). This specific subparagraph of 227(b) does not differentiate between residential or business phones—it specifically applies to "any" cellular telephone. When Congress wanted to further limit a subparagraph within 227(b) to only residential or only businesses phones, it did. In 47 U.S.C. § 227(b)(1)(B), Congress prohibited calls "to any **residential** telephone line using an artificial or prerecorded voice without the prior express consent of the called party. . ." (emphasis added). Similarly, in 47 U.S.C. § 227(b)(1)(D), Congress prohibited the use of an autodialer "in such a

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 5
1:20-cv-00201-SRB

way that two or more telephone lines of a multi-line **business** are engaged simultaneously" (emphasis added). This not only shows that Congress limited certain subparagraphs of 227(b) to just residential lines or just business lines, it also shows that Congress explicitly referred to and protected business lines. In the case of 227(b)(1)(A)(iii), Congress applied the autodialer prohibition to "any call" and to "any... cellular telephone," whether residential or business. In addition, the private right of action for 227(b) provides that "[a] person **or entity**" may bring "an action based on a violation of this subsection" which includes a violation of 227(b)(1)(A)(iii). *Id.* at 227(b)(3) (emphasis added). It is evident that business cell phone users fall withing the "particular class of persons [who] ha[ve] a right to sue under" subsection 227(b) of the TCPA. The statutory text and private right of action clearly indicate that the interest of businesses *are* protected under 227(b)(1)(A)(iii), which prohibits autodialed calls to any cell phone.

Second, Congress' finding of facts explicitly states that "businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded calls are a nuisance [and] are an invasion of privacy." Because Congress found that automated calls to businesses were a nuisance and invasion of privacy and subsequently enacted 227(b)(1)(A), which prohibits automated calls to *any* cell phone, it follows that business cell phones fall within the zone of interest Congress intended to protect under 227(b).

The Court's reading of *Stoops* has resulted in a novel and incorrect legal principle: that Congress did not intend for the TCPA's protections to extend to businesses. *Stoops* is inapposite to the present lawsuit. Ms. Stoops was a serial TCPA Plaintiff who "purchased at least thirty-five cell phones… for the purpose of filing lawsuits." *Stoops v. Wells Fargo Bank*, 197 F. Supp. 3d 782, 788 (W.D. Pa. 2016). The court in *Stoops* found it "unfathomable" that Congress had in mind the interests of "a consumer who **files TCPA actions as a business** when it enacted the TCPA." *Id.* (emphasis added). The court in *Stoops* did not hold that business cell phones are outside of the interests Congress intended to protect. Rather, the court held that those who purchase phone numbers solely to generate "TCPA actions" and pursue TCPA lawsuits "as a business" are outside the privacy interests Congress protected. The Plaintiffs in the present

lawsuit occasionally use their personal cell phone numbers for business, rather than *as a means to generate TCPA lawsuits*. Even the lead counsel in *Stoops* admitted the holding in that case does not apply to Plaintiffs when he reviewed this Court's ruling in a recent blog post.[1] *See* "Step in the Right Direction: New Case Holds TCPA Doesn't Apply to Business Cell Phones—But Don't Get Excited Just Yet." *See* Exhibit A. (Found at https://tcpaworld.com/2020/09/11/step-in-the-right-direction-new-case-holds-tcpa-doesnt-apply-to-business-cell-phones-but-dont-get-excited-just-yet/, published September 11, 2020, last accessed September 16, 2020.)

      Third, every other court who has analyzed whether businesses fall within 227(b)'s zone of interest has concluded that they do. *See, e.g., Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 565 (E.D. Pa. 2019) (finding spam faxes sent to a business in violation of 227(b) are within the TCPA's zone of interest where "[t]here is no evidence in the record to suggest that [Plaintiff] runs his practice to receive unsolicited telecommunications, as the plaintiff did in *Stoops*."); *Andrews v. Simm Assocs., Inc.*, No. C16-5770 BHS, at *9 (W.D. Wash. Aug. 9, 2017) (Plaintiff is within the zone of interest where "Defendant made automated phone calls to [Plaintiff's] work line."); *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 151 n.4 (D. Md. 2018) ("[T]he TCPA itself is not expressly limited to individual consumers, and such a finding would be inapposite with cases discussed herein that held that corporate plaintiffs had standing to pursue TCPA claims. *See* 47 U.S.C. § 227(b)(3) (noting that a 'person or *entity*' may bring a private right of action for TCPA violations).") (emphasis in original).

---

[1] Eric Troutman is a prominent TCPA defense attorney, the founder of the blog TCPAWorld, and the attorney on record for the prevailing party (Wells Fargo) in *Stoops*. He recently commented on this Court's dismissal, agreeing that *Stoops* is inapposite: "[*Stoops*] looked at the exploitation of the statute by parties who knowingly invent lawsuits; but merely using a phone for business purposes, without more, is not the same thing as knowingly inviting or manufacturing TCPA violations…. Please do NOT let anyone convince you that business cellular numbers are now somehow categorically exempt from the TCPA…. The DNC rules generally do NOT apply to calls to businesses (but watch out where a business number is used for residential purposes.) But the TCPA's dialer and pre-recorded voice restrictions are generally held to apply to ANY cell phone (business or residential)." *Id*.

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 7
1:20-cv-00201-SRB

All Plaintiffs have alleged Defendants texted their cell phones using an autodialer, without Plaintiffs' prior express consent (written or otherwise). Complaint at ¶¶ 10-12, 17, 27-28 [Dkt. #2]. "The Ninth Circuit has established three elements for a TCPA violation: '(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042-43; *see also* 47 C.F.R. § 64.1200(a)(1) & (2). Whether those numbers were registered to an individual or a business is irrelevant for purposes of standing under 227(b)—*any* call made using an autodialer or an artificial or prerecorded voice to a cell phone is prohibited. 47 U.S.C. § 227(b)(1)(A). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff presents a facially plausible claim when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, "[t]he Court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Star Dialysis, LLC v. WinCo Foods Emp. Ben. Plan*, 401 F.Supp.3d 1113, 1124 (D. Idaho 2019) (citing *Knievel v. ESPN*, 303 F.3d 1068, 1072 (9th Cir. 2005)); *see also Wyler Summit Pshp. v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). "We presume that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994).

Here, Plaintiffs made factual allegations that their cellular devices were autodialed by Defendants. Complaint at ¶¶ 10-12, 17, 27-28 [Dkt. #2]. These were "short and plain statement[s]," as required by FRCP 8(a)(2). Plaintiffs described in detail the text messages they received from Defendants. Complaint at ¶¶ 10-36. Plaintiffs even provided a minimum calculation of damages based on the length of time each individual Plaintiff reported receiving text messages (with a beginning date and end date, as reported by Plaintiffs). Exhibit A to Complaint, Dkt. #2-1. Such a calculation is unnecessary at this point in the proceedings, but was offered in order to demonstrate the strength of the evidence Plaintiffs have (each Plaintiff

received a minimum of two messages per week, and many received quite a few more). According to the caselaw cited above, the Court "must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Star Dialysis*, 401 F.Supp.3d at 1124. However, the Court ignored Plaintiffs' factual allegations regarding their autodialer claims and failed to construe the pleadings in any favorable way to the nonmoving party on the motion to dismiss, instead lumping Plaintiffs' 227(b) claims in with their 227(c) claims and eliminating both on the erroneous reasoning that residential lines used in conjunction with a home-based business are not protected by the TCPA. Order at 4, Dkt. #24. This decision is plain error in regards to Plaintiffs' 227(b) claims and should be altered. Plaintiffs pled factual allegations that Defendants texted their cell phones using an autodialer and further provided evidence that supports the inferences that 1) an autodialer was used, and 2) Defendants were responsible. Plaintiffs are entitled to a presumption that these factual allegations are true. *Knievel*, 303 F.3d at 1072 (9th Cir. 2005); s*ee also Wyler*, 135 F.3d at 661 (9th Cir. 1998).

The statutory text of 227(b) is clear, and so were Congress's findings when passing the TCPA. Every court that has faced the issues has agreed: Congress intended to protect all cellular devices (both individual and business) from autodialed and prerecorded calls. Business numbers are within the zone of interest of several subsections of 47 U.S.C. § 227 and are included in the protections of subsection 227(b)(1)(A). Plaintiffs here are squarely within the zone of interest Congress intended to protect when Congress passed subsection 227(b) of the TCPA. The Court's decision should be altered and the motion to dismiss Plaintiffs' 227(b) claims should be denied.

**2. The 227(c) Zone of Interest: Calls Made to Residential Subscribers**

The Court further committed clear error in finding Plaintiffs do not fall within the zone of interest of the TCPA and applying that holding to those Plaintiffs who alleged 227(c) Do Not Call claims. The Court's ruling on Defendants' motion to dismiss creates a new and incorrect principle of law. Contrary to the Court's holding, the law is clear that Plaintiffs fall within the zone of interest for subsection 227(c) for multiple reasons: (1) both the government and the

courts have said the depth and breadth of this interest in residential telephone subscribers' privacy rights is substantial; (2) the TCPA prohibits any solicitations to residential subscribers; (3) the FCC has denied requests to allow solicitations where an individual uses a residential telephone for business purposes; (4) the TCPA is a remedial statute entitled to broad construction; (5) the statutory objectives of the TCPA are frustrated if the privacy rights of residential lines are not protected simply because the line may also be used for business; (6) GoSmith has insisted on classifying those it spams as "consumers"; and (7) the allegation of a residential subscription places Plaintiffs squarely within the zone of interest for Do Not Call protections and is not appropriately factually decided at the pleading stage.

      Subsection 227(c) of the TCPA is narrower than 227(b). While 227(b) has sections that apply to various groups (one part applies to "any cellular telephone," another to "residential line[s]," and yet another to "multi-line business[es]"), 227(c) only applies to "residential telephone subscribers." *Id.* at 227(c)(1). Under 227(c), Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights." *Id.* The resulting regulations are 47 C.F.R. § 64.1200(c) (prohibiting calls to phone numbers on the national do-not-call registry) and 47 C.F.R. § 64.1200(d) (requiring telemarketers to maintain an internal/company-specific do-not call list that meets certain minimum standards). These protections are not limited to residential *landlines*—cell phones are entitled to the protections of 227(c) because "such action will better further the objectives of the TCPA." *2003 FCC Order*, 18 FCC Rcd. 14014 at ¶ 33. 416; *see also* 47. C.F.R. 64.1200(e). The national do not call and company-specific do-not call regulations protect "residential telephone subscribers' privacy rights" (including cell phones). *Id.*, *see also* 27 U.S.C. § 227(c); 47 C.F.R. 64.1200(c) & (d). This protection applies to Plaintiffs for the reasons outlined below.

      First, both the government and the courts have said the depth and breadth of this interest in residential telephone subscribers' privacy rights is substantial. The 4th and 10th Circuits have held that the regulations are justified by an "undisputed substantial governmental interest" in "**protecting the privacy of individuals in their homes**." *Mainstream Marketing Services v.*

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 10
1:20-cv-00201-SRB

*F.T.C.*, 358 F.3d 1228, 1237 (10th Cir. 2004) (emphasis added); *National Federation of the Blind v. F.T.C.*, 420 F.3d 331, 340 (4th Cir. 2005) ("Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different.... [A] special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that **individuals are not required to welcome unwanted speech into their own homes**.") (citing *Frisby v. Schultz*, 487 U.S. 474, 484.) (emphasis added).

> The Senate identified this same interest when passing the TCPA:
>
> The reported bill does not discriminate based on the content of the message.... The reported bill regulates. . . the place (the home) where the speech is received. The Supreme Court also has recognized that **'in the privacy of the home' the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.**" *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978).

Senate Report 102-178, October 8, 1991, at 4 (emphasis added).

Second, the TCPA specifically protects individuals on the Do Not Call list from an invasion of privacy in the home. The regulation prohibits "*any* telephone solicitation to... residential telephone subscriber[s]." 47 C.F.R. § 64.1200(c)(2) (emphasis added). The regulation does not distinguish between the type of solicitation, whether business or consumer. *Id.* at § 64.1200(f)(14) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."). Any solicitation to a residential telephone subscriber is prohibited. Also, nothing in the regulation exempts business solicitations made to residential subscribers who use their phones for business.

Third, the FCC, charged with enacting regulations to enforce the TCPA, has denied requests to allow solicitations where an individual uses a residential telephone for business purposes. In 2003, the Direct Marketing Association ("DMA") noted in an FCC petition that the "term 'residential subscriber'… is not defined anywhere in the TCPA" and requested the FCC

make "absolutely clear that calls made to businesses are exempt from the DNC rules." *Petition for Reconsideration* at 8, last accessed 9/10/2020 at https://ecfsapi.fcc.gov/file/6514782187.pdf The DMA also requested the FCC for a ruling that "[i]f the caller is calling [a residential line] for a business purpose, and understands that the number dialed is used for business purposes, the caller should not have to scrub the number against the national DNC list." *Id.* at 10. The DMA gave examples of individuals it wanted permission to contact, such as "the American farmer [who] has a 'residential' listing but uses that phone number both for personal use and for business purposes"; the individual who "has multiple 'residential' listings but uses one... of those lines exclusively for business"; the self-employed consultant; freelance photographers; and even web designers. *Id*. at 9-10.

   The FCC denied both of DMA's requests. First, the FCC said: "We disagree with the DMA that the rules should be revised to expressly exempt calls to business numbers." *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788, 3793 (2005) (hereinafter "2005 FCC Order"). The FCC reasoned that the TCPA was clear enough on its face and that calls to strictly business subscribers would not be punished. *Id*. Second, the FCC denied DMA's request to excuse callers from scrubbing against the national do not call list when soliciting residential lines used for business purposes: "We also decline to exempt from the do-not-call rules those calls made to 'home-based businesses.'" *Id.* The FCC thus clarified that callers must abide by (i.e. they are not exempt from) the do-not-call rules even in situations where a residential line is used for business (i.e. a "home-based business"). In situations where it may be ambiguous whether a phone number is a residential or business subscription, the FCC said a factual inquiry is necessary to "review such calls as they are brought to our attention to determine whether or not the call was made to a residential subscriber." *Id.* If the solicitation is to a business subscriber, the do-not-call rules do not apply. However, if the solicitation is to a residential subscriber (regardless of the purpose of the solicitation *and even if* the residential subscriber uses the number for mixed personal/business use), the do-not-call rules *do* apply.

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 12
1:20-cv-00201-SRB

Fourth, this interpretation of the TCPA is further supported by the fact that the "TCPA is a remedial statute and thus entitled to a broad construction." *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927, 930 (N.D.W. Va. 2013) (citing *Holmes v. Back Doctors, Ltd.*, 695 F.Supp.2d 843, 854 (S.D. Ill. 2010) ("It is true that . . . the TCPA is a remedial statute.")). Indeed, the TCPA "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Mey*, 959 F. Supp. 2d at 930 (quoting *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950)); see also *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987) (holding that when interpreting broad remedial statutes, courts should apply a "standard of liberal construction in order to accomplish [Congress's] objects" (citation omitted)); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 149 (2d Cir. 2000) ("[I]t is our duty to interpret remedial statutes broadly.").

Fifth, as the Supreme Court recently noted, Congress passed the TCPA in "response[] to a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. American Assn. of Political Consultants, Inc.*, No. 19-631, at 5 (July 6, 2020). These telemarketing calls "wake us up in the morning; they interrupt our dinner at night." *Id.* at 5, quoting 137 Cong. Rec. 30821 (1991). Indeed, the TCPA was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* citing TCPA, §2, ¶¶3, 6, 105 Stat. 2394. The statutory objectives of the TCPA are frustrated, not furthered, if telemarketing calls are allowed to wake individuals up in the morning and interrupt individuals' dinner at night simply because an individual happens to use their personal cell phone for business use. The interests protected under 227(c) are clearly broad enough that individuals' constitutional rights to privacy in their own homes does not evaporate merely because they happen to use their residential phone for business. This is especially true today, where anyone who can do so is required to work from home due to COVID-19 precautions. Even prior to the worldwide pandemic, the Freelancing in America Survey found that one third of the U.S. population are freelancers, a number that is expected to rapidly expand over the next 7 years to 50% of the population by 2027. *See* "Are We

*Ready For a Workforce That is 50% Freelance?"* Pofeldt, Elaine. Forbes, October 17, 2017, available at: elainpofeldt/2017/10/17are-we-ready-for-a-workforce-that-is-50-freelance/#4c34a96f3f82, last accessed September 24, 2020.

Sixth, GoSmith itself viewed and treated other similarly-situated plaintiffs as individual consumers and not businesses. In other lawsuits against GoSmith for violations of the TCPA, GoSmith enforced its terms of service which required plaintiffs who had agreed to GoSmith's terms on their website to arbitrate under the American Arbitration Association's ("AAA") "Supplemental Procedures for Consumer-Related Disputes." *See e.g.* Motion to Compel Arbitration*, Petrie v. GoSmith, Inc.*, Case 1:18-cv-01528 (D. Col 2019) [Dkt. #27 at 7]. Per the AAA, a party can bring a proceeding under the Procedures for Consumer-Related Disputes (subsequently renamed the "Consumer Arbitration Rules") where the arbitration provision specifies that the Procedures for Consumer-Related Disputes apply or where the agreement is a consumer agreement. *Consumer Arbitration Rules* at 9, https://adr.org/sites/default/files/Consumer%20Rules.pdf, last accessed September 15, 2020. "The AAA defines a consumer agreement as an agreement between an individual consumer and a business," and requires that the "product or service must be for personal or household use." *Id*. By invoking the consumer rules in its arbitration clause with those it spammed, GoSmith tacitly acknowledged the recipients of its texts are consumers. At a minimum, GoSmith saw no impropriety in treating other similarly-situated plaintiffs as individual consumers (and not as businesses).

Finally, the allegation of a residential subscription places Plaintiffs squarely within the zone of interest for Do Not Call protections and should not be factually decided at the pleading stage. Courts have routinely held that where a TCPA zone of interest determination is fact specific, dismissal at the pleading stage is not appropriate. *See, e.g., Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 327 (3d Cir. 2015) (where a "complaint alleges [Defendant] placed a call 'to [Plaintiff's] residential telephone line[,]' [a]t the motion to dismiss stage, we are required to treat this allegation as true, and it places [Plaintiff] squarely within the zone of interests."); *Physicians Healthsource, Inc. v. Advanced Data Sys. Int'l, LLC*, Civil Action No. 16-3620 (JMV) (JBC), at

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 14
1:20-cv-00201-SRB

*12-13 (D.N.J. May 27, 2020) (whether a Plaintiff's claims are "outside the zone of interest" because Plaintiff seeks out spam to then file TCPA lawsuits is a question to be determined "following discovery" and not at pleadings stage); *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, at *10-11 (D. Utah May 20, 2020) (where Defendants dispute Plaintiff's contention that phone numbers are not used in "TCPA litigation business" and "numbers are used for residential purposes only," such pleadings are "sufficient at the motion to dismiss stage to bring Plaintiffs within the zone of the privacy rights the TCPA protects.") Across the nation, courts have consistently distinguished mixed-use residential phone numbers used in home-based businesses from business-only phone numbers and "permitted discovery to discern the nature of the alleged home-based business use." *Mattson v. Quicken Loans Inc.,* 2019 U.S. Dist. LEXIS 225872 at **13-14 (D. Or. 2019); *Mattson v. New Penn Financial, LLC,* 2019 U.S. Dist. LEXIS 225821 at **10-12 (D. Or. Nov. 7, 2019). When a Plaintiff alleges violations of 47 U.S.C. 227(c) to a mixed-use residential number, that individual's claim may not be dismissed without a factual inquiry into the nature and use of the number. According to various federal courts:

> Whether a telephone number is truly 'residential" is a question of fact that is not appropriate for resolution at the motion to dismiss stage. *See Bank v. Indep. Energy Grp. LLC,* No. 12-CV-1369, 2014 U.S. Dist. LEXIS 141141, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014) (denying motion to dismiss where residential line may have been held out as a business line and allowing limited discovery); *Baker v. Certified Payment Processing, L.P.*, No. 16-CV-03002, 2016 U.S. Dist. LEXIS 78368, 2016 WL 3360464, at *3 (C.D. Ill. June 16, 2016) (denying defendant's motion to dismiss so that parties may conduct discovery to determine whether the phone line was residential or business [and stating that "Construing all reasonable inferences in favor of Plaintiff, Plaintiff has alleged a TCPA claim by alleging that Defendant made calls to Plaintiff's residential number that is registered on the National Do Not Call Registry."); *Clauss v. Legend Sec., Inc.*, No. 4:13-

> CV-00381-JAJ, 2014 U.S. Dist. LEXIS 184286, 2014 WL 10007080, at *2 (S.D. Iowa Sept. 8, 2014) (finding that the issue of whether the subject phone line was residential or business was a disputed fact even after discovery and that summary judgment was therefore inappropriate).

*Owens v. Starion Energy, Inc.*, 2017 U.S. Dist. LEXIS 101640 at *7-8 (D. Conn. 2017); *see also Blevins v. Premium Merch. Funding One, LLC,* 2018 U.S. Dist. LEXIS 183362 at *6 (S.D. Ohio Oct. 25, 2018) (stating that "courts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes.").

**V.     CONCLUSION**

Plaintiffs filed suit under two separate subsections of the Telephone Consumer Protection Act—namely, 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)—which protect separate and distinct interests. Yet the Court incorrectly treated both subsections as if they protected the same interests. 47 U.S.C. § 227(b) protects *all* cell phones from autodialed calls. 47 U.S.C. § 227(c) protects residential subscribers (even those who use the same line in a home-based business) from all telephone solicitations, as long as their numbers are registered on the Do Not Call list. A business subscriber who has a cell phone is still protected from autodialers under 227(b), even if he cannot bring a Do Not Call claim under 227(c). And a home-based business owner who registers her residential phone line on the Do Not Call list is protected under 227(c). If that line is also a cell phone, it is also protected from autodialed calls and prerecorded messages under 227(b). The two provisions are not mutually exclusive, and it is overly broad and plainly erroneous to claim that business numbers are not protected by the TCPA, especially where several provisions explicitly state special protections for business lines. *See, e.g.*, §§ 227(b)(1)(A); 227(b)(1)(C)-(D). Automated calls to *any* cell phone fall within the zone of interest for 227(b). *See* 47 U.S.C. § 227(b). And any residential subscriber that places his or her number on the Do Not Call list is within the zone of interest for 227(c). *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c).

MEMORANDUM IN SUPPORT OF MOTION TO ALTER JUDGMENT - 16
1:20-cv-00201-SRB

When facing a factual inquiry into whether a particular phone line is a residential subscription, the Court's determination should be construed liberally because (1) the protections under 227(c) are based on the government's substantial interest in protecting privacy within the home, (2) the TCPA is a remedial statute that should be construed broadly, (3) the regulations and rulemaking of the FCC indicate that any solicitation to a residential telephone number on the Do Not Call Registry is prohibited under 227(c) independent of the purpose of the call, and (4) GoSmith itself treats the contractors it spams as individual consumers and not as businesses, especially for purposes of enforcing arbitration.

Plaintiffs have alleged that Defendants spammed their residential phones. These are cell phones that are clearly within the zone of interest for § 227(b). Those Plaintiffs who alleged Do Not Call claims will show in discovery how their numbers are residential subscriptions and to what extent they are individually within the zone of interest for § 227(c). Plaintiffs are protected by § 227(c) and should not be prevented from remedy by this Court. Many have had the same phone number since high school, years before ever starting a business. Their cell phone plans were and still are personal plans that are paid out of their personal accounts (with billing addresses at their personal residences), and the majority of all their calls are personal calls, between friends and family. In fact, some of the Plaintiffs had not run a business or were no longer running their home-based business at the time GoSmith was spamming them and were only using their cell phones for personal use. The statutory objective § 227(c) is to protect the privacy of individuals in their home. To hold that Plaintiffs claims are outside the zone of interest is more likely to frustrate than to further this statutory objective and is inappropriate at the pleading stage.

Leave to amend an initial pleading rests in the discretion of the Court and "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a); *see also Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). In determining whether amendment is appropriate, the Court considers five potential factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing

party, (4) futility of amendment, and (3) whether there has been previous amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). The Court's decision is guided by the established practice of permitting amendments with "extreme liberality" in order to further the policy of reaching merit-based decisions. *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In light of this policy, the nonmoving party generally bears the burden of showing why leave to amend should be denied. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

There is no need for Plaintiffs to amend their claims for 227(b) violations, and it is inappropriate to dismiss 227(c) claims at the pleading stage when the question of whether the number is a residential subscription is a fact-intensive inquiry. However, because the Court has concerns regarding those Plaintiffs who have alleged 227(c) Do Not Call violations (although not every Plaintiff has made those claims—see Exhibit A, Dkt. #2-1), if the Court is still inclined to dismiss those 227(c) claims, Plaintiffs request leave of the Court to amend their complaint and add specific allegations regarding the exact nature of each Plaintiffs' residential subscriptions and use.

**Plaintiffs respectfully request** the Court alter and/or amend its September 2 Order [Dkt. #24] to deny Defendants' Motion to Dismiss and find that Plaintiffs are within the zone of interest for both 227(b) and 227(c), or alternatively, to appropriately defer such a decision until after discovery. In the second alternative, Plaintiffs request the Court alter its Order to grant Plaintiffs leave to amend.

| | |
|---|---|
| Respectfully submitted, | **LawHQ, LLC** |
| Date: September 24, 2020 | /s/ *Rafael Icaza* <br> Rafael Icaza (Idaho Bar No. 10912) |
| | /s/ *Rebecca Evans* <br> Rebecca Evans, (PHV, UT #16846) |
| | *Attorneys for Plaintiffs, listed below* |

## LIST OF PLAINTIFFS

| | | |
|---|---|---|
| Larry Akins | Greg Dodgson | Nick Miller |
| Gary Alger | Briana Ethington | Gabriel Miranda |
| Gabriel Anguiano | Jonathon Forsythe | Alfonso Miranda |
| Joshua Barkdull | David Frost | Michael Monzo |
| R.B. Beal | Scott Glubay | James Payne |
| Rory Bond | Stryder Hartley | Robert Pelcher |
| Vadim Bondar | Joseph Hartsough | Sean Priest |
| Christopher Borges | Andrea Hatch | Kyle Robb |
| Charlene Branham | Nathaniel Hood | John Rowe |
| Roger Burt | Nicholas Jones | Jake Rozsa |
| Adam Byerley | Tom Keffer | Ron Schaefer |
| Nathan Chennette | Roger Kennedy | Owen Shaw |
| Stefanie Christopherson | Michael Larson | George Simmons |
| Jason Coulter | Jonah Lucht | Michael Smith |
| Travis Crone | Christian Lyness | Levi Stoddard |
| Jose de la Mora | Jonathan McCormick | Jeremy Vogel |
| Steven Dick | April Michael | Nicole Wood |